UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                  :
JIM FARES,                                                        :
                                                                  :
                     Plaintiff,                           :   **MEMORANDUM**
                                                                  :   **DECISION AND ORDER**
              - against -                              :
                                                                  :   14 Civ. 05289 (BMC)
PETER LANKAU, et al.,                                             :
                                                                  :
                     Defendants.                          :
                                                                  :
----------------------------------------------------------------- X

**COGAN**, District Judge.

Before me is defendants' motion to dismiss the Amended Complaint for failure to state a claim. Also pending is defendants' request for a pre-motion conference seeking leave to move for Rule 11 sanctions. Familiarity with plaintiff's factual allegations is assumed, and they have been set forth in two previous opinions of the United States District Court for the District of Delaware, from which this case was transferred to this Court. The gravamen of plaintiff's claim is that his shares of the company controlled by defendants – a company he founded, as it happens – were diluted by a stock offering approved by defendants at an undervalued price, in which he and the other minority shareholders were afforded an opportunity to participate up to their *pro rata* share, but in which he did not participate. The procedural posture of this case is complex, but the question that resolves the instant motion is straightforward. For the reasons that follow, defendants' motion to dismiss is granted.

## BACKGROUND

On June 19, 2013, when this case was pending in the District of Delaware, Judge Sue L. Robinson granted defendants' motion to dismiss the Amended Complaint and closed the case.

Her decision began by noting, correctly, that equity dilution claims such as this one are traditionally derivative claims under Delaware law – which the parties agree is controlling in this case – but that such claims "may be both direct and derivative in the limited circumstances when (1) a stockholder having majority or effective control causes the corporation to issue excessive shares of its stock in exchange for assets of the controlling stockholder that have a lesser value; and (2) the exchange causes an increase in the percentage of the outstanding shares owned by the controlling stockholder, and a corresponding decrease in the share percentage owned by the public (minority) shareholders." 953 F. Supp. 2d 524, 529 (D. Del. 2013) (quoting Gentile v. Rossette, 906 A.2d 91 (Del. 2006)) (internal quotation marks omitted). She then held that plaintiff's allegations were insufficient to state a direct claim because they did not "mention any 'exchange for assets' that are of lesser value than the stocks issued" and, in her view, a sale of stock for cash could not give rise to the kind of direct claim contemplated by Gentile. Id. at 530. She then determined that plaintiff could not maintain a derivative claim because he had not sufficiently plead demand futility under Fed. R. Civ. P. 23.1. Id. at 530-31.

On August 15, 2013, Judge Robinson granted plaintiff's motion for reconsideration of her dismissal order. See No. 12-cv-1381, 2013 WL 4449969 (D. Del. Aug. 15, 2013). The thrust of Judge Robinson's reconsideration was that an intervening decision by the Delaware Court of Chancery, Carsanaro v. Bloodhound Techs., Inc., 65 A.3d 618 (Del. Ch. 2013), had "clarified" that a sale of stock for cash *was* sufficient to meet the "exchange for assets" requirement of Gentile. 2013 WL 4449969, at *3. Importantly, for our purposes, she then went on to hold that plaintiff's allegations were sufficient under the second prong of Gentile as well, id. at *5, a question she had not needed to consider in her prior dismissal, except to note that "[plaintiff's]

2

claim has components of a direct claim in that he individually suffered economic injury and a decrease in voting power." 953 F. Supp. 2d at 530.

Because plaintiff had also appealed that dismissal, Judge Robinson declined to consider the additional grounds presented in defendants' motion.[1] The appeal was dismissed about two months later. On June 17, 2014, after further proceedings which included oral argument, Judge Robinson transferred the case to this District pursuant to a forum selection clause in plaintiff's stockholders agreement that she found controlling under 28 U.S.C. § 1404(a).[2]

## DISCUSSION

To grant the relief sought by plaintiff in connection with this motion – *i.e.*, to allow this case to proceed to discovery – would require me to agree with Judge Robinson that plaintiff has stated a direct claim for breach of fiduciary duty under Gentile. I cannot in good conscience do so. It is axiomatic that a prior interlocutory ruling "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment." Fed. R. Civ. P. 54(b). It is also "well established" that interlocutory rulings "may be modified to the same extent if the case is reassigned to another judge." In re United States, 733 F.3d 10, 13 (2d Cir. 1984). Of course, a district court's power to revisit a previous decision is circumscribed by the "law of the case" doctrine. However, that doctrine "directs a court's discretion, it does not limit the tribunal's power" to undo an incorrect decision.

---

[1] Those issues, which remain open before me, include the effect of a release purportedly signed by plaintiff in connection with his departure from the company, and simply whether he has stated a claim for breach of fiduciary duty under the Rule 12(b)(6) standard. Because I dispose of the instant motion on effectively the same grounds that Judge Robinson did originally, I need not reach those questions.

[2] The case was assigned to me on July 31, 2014, and I held an initial status conference by telephone on August 27, 2014. I ordered supplemental briefing on the instant motion. On October 15, 2015, along with opening briefs, I was advised that plaintiff had filed a voluntary petition for bankruptcy in Nevada, calling into question his authority to prosecute this case. After a period of litigating that issue, plaintiff established his authority to prosecute this case as debtor in possession of his bankruptcy estate through his current counsel on April 17, 2015. I have since proceeded to consider the merits of defendants' motion.

3

Arizona v. California, 460 U.S. 605, 618, 103 S. Ct. 1382, 1391 (1983).  The Second Circuit has held that "district courts may . . . depart from the law of the case and reconsider their own decisions for cogent and compelling reasons," such as the "need to correct clear error."  United States v. Johnson, 378 F.3d 230, 245 n.16 (2d Cir. 2004) (internal quotations omitted); see also Lewis v. Tuscan Dairy Farms, Inc., 907 F. Supp. 740, 746 (S.D.N.Y. 1995), aff'd sub nom. Lewis v. Whelan, 99 F.3d 542 (2d Cir. 1996) ("To the extent the law of the case doctrine exists in federal court, it sets a prudential and not a mandatory rule, and does not prevent a court from correcting its own mistakes.") (citing Higgins v. California Prune & Apricot Grower, Inc., 3 F.2d 896 (2d Cir. 1924) (L. Hand, J.)).

I believe that it was clear error under Delaware law for Judge Robinson to conclude that a company's sale of stock for less than its proper value, in which any shareholder has the opportunity to participate and to maintain his *pro rata* share, states a direct claim for equity dilution – in other words, that those facts are sufficient to show that "the exchange causes an increase in the percentage of the outstanding shares owned by the controlling stockholder, and a corresponding decrease in the share percentage owned by the public (minority) shareholders."  Gentile, 906 A.2d at 100.[3]  It would therefore be unjust to require defendants to proceed in defending this case on other grounds, bound to an incorrect determination that the facts plaintiff will be seeking to prove state a claim, when they do not.  In other words, were I to accept Judge Robinson's view of Delaware law as the law of the case and proceed to summary judgment or trial, I would have to apply what I believe is an erroneous view of the law in order to allow plaintiff to recover.  No principle of comity or estoppel requires this, and Rule 54(b) exists precisely to avoid that absurdity.

---

[3] I have no disagreement with Judge Robinson's determination that the Amended Complaint sufficiently pleads that "a stockholder having majority or effective control cause[d] the corporation to issue excessive shares of its stock in exchange for assets of the controlling stockholder that ha[d] a lesser value," as required by the first prong.  Id.

Substantively, the principle that must be applied here is obvious as a matter of common sense. Plaintiff does not dispute that he and the other minority shareholders were given an opportunity to participate as buyers in the challenged offering. Thus, although it is true that plaintiff's share percentage actually did decrease when he opted not to participate, it cannot be said that defendants' actions caused that change for purposes of the second prong of Gentile.

In holding otherwise, Judge Robinson relied principally on Dubroff v. Wren Holdings, LLC, No. 3940, 2011 WL 5137175 (Del. Ch. Oct. 28, 2011), an unpublished decision of the Delaware Court of Chancery. Specifically, she cited its holding that:

> Although some Delaware courts have used the word 'exclusive,' or its equivalent, in discussing direct equity dilution claims, the syllogism – if anyone other than the controller benefits from the transaction, then the minority may not assert a direct equity dilution claim – is much too simplistic. A corporation's minority shareholders should not be denied a direct equity dilution claim where a controller expropriates, from them, a large percentage of the corporation's equity, keeps most of that expropriated equity for itself, and gives a small amount to other people.

Id. at *8. In Dubroff, the corporation's control group undertook a recapitalization in which certain debt would be converted to stock, and additional stock would be issued in exchange for new investment; members of the control group, as well as some but not all of the minority shareholders, including some of the plaintiffs, participated in the recapitalization. Id. at *2-3. The control group's share of equity increased from about 56% to about 90%. Id. at *3.

Subsequently, the corporation's shareholders "received an update notice (the 'Update'), which stated that '[i]n early August [2002] in order to simplify and strengthen its capital structure, debt holders converted debt to equity and [the Company] declared a one for twenty reverse stock split.' The Update, however, did not disclose who benefited from the Recapitalization or what benefits they received." Id. (edit marks in original). Minority

5

shareholders did not become aware of the recapitalization until, several years later, proxy materials seeking approval of a merger revealed the extent of the change in ownership share. Id.

This is a critical factual distinction. The direct claim contemplated by Gentile arises when "public shareholders are harmed, uniquely and individually, to the same extent that the controlling shareholder is (correspondingly) benefited." Gentile, 906 A.2d at 100. Taking every one of plaintiff's allegations as true, there was no benefit conferred on defendants that was not also available to plaintiff and other minority shareholders. This is not the situation that the Dubroff court was being asked to consider when it held that a control group that appropriates value and "gives a small amount to other people" may be liable in a direct claim brought by those who were excluded.

My view is in accord with the reasoning of the District Court in Joe W. & Dorothy Dorsett Brown Found. v. Frazier Healthcare V, L.P., 889 F. Supp. 2d 893 (W.D. Tex. 2012), aff'd, 538 F. App'x 484 (5th Cir. 2013) ["Frazier"], which held that similar facts to those here "do not fit within the narrow rule" established in Gentile allowing direct equity dilution claims. Id. at 898. The Frazier court determined that the plaintiffs had failed to satisfy the second prong of Gentile because to do so, they must have "show[n] the benefit received by the controlling stockholder was an exclusive one." Id. at 899-90 (citing Feldman v. Cutaia, 956 A.2d 644, 657 (Del. Ch. 2007), aff'd, 951 A.2d 727). The court recognized its conflict with the language of Dubroff, but found that Dubroff did not require a different result for two reasons. First, the Dubroff court had characterized "exclusive" to mean that nobody but the control group had been afforded an opportunity to participate, but (reasoned the Frazier court) the focus should have been on whether the *plaintiff* was able to participate. Id. at 900. Second, as a practical matter:

> [T]o apply the Gentile rule as broadly as Dubroff has done would essentially destroy the derivative-direct distinction in equity dilution claims cases such as

> this, because . . . it will very often be the case that some shareholders see their equity diluted when corporate debt is converted to equity. And, probably even in a majority of cases, controlling shareholders and their nominee directors will be among those whose debt is increased to equity. The broad holding in Dubroff would subject those shareholders and directors to post-merger, direct claims in almost every instance, and would transform debt-to-equity conversions, a standard and normally legitimate corporate practice, into minefields of Gentile liability. This appears to be contrary to long-standing Delaware Supreme Court precedent, which repeatedly affirms that the merger event essentially ends such claims, absent certain narrow exceptions. Accordingly, . . . [plaintiffs] must show they were excluded from the benefit . . . to state a claim under Gentile.

Id. (citation omitted). The court concluded that because the plaintiffs had admitted that they had been "offered the opportunity to participate" in the offering, and because other non-controlling shareholders had actually done so, there was no direct claim available under Gentile because "they could have participated, but chose not to." Id. at 901.

Judge Robinson also cited St. Clair Shores Gen. Emps. Ret. Sys. v. Eibeler, 745 F. Supp. 2d 303, 313 n.10 (S.D.N.Y. 2010), in support of her determination that a direct claim had been plead. The proposition for which she cited that case is unclear. In St. Clair, the plaintiffs alleged that the control group failed to make certain disclosures, which failure "led [the company's shareholders to approve . . . additional shares for the company's stock option plans, which, once issued, diluted [the] Plaintiff's equity in [the company] and impaired its voting rights." Id. at 306. The court rejected the direct claim for a variety of reasons, including failure to plead the existence of a control group, and that the alleged harm was more properly considered as derivative. The footnote cited by Judge Robinson adds that "[a] further defect in the Amended Complaint is that there is no allegation that the Defendants were the *sole* beneficiary of the options grants. In fact, the Amended Complaint does not contend that all of the options . . . went to the Defendants. . . . This violates the principle of the direct-harm cases that the *sole beneficiary* of the transaction be the defendants." Id. at 313 n.10 (citing Gentile, 906 A.2d at 100; additional record citations omitted).

7

Finally, Judge Robinson cited Carsanaro, 65 A.3d at 660, which as she correctly observed had "noted that an individual claim is possible when there is an 'inter-class conflict' in which the directors favored themselves and shifted value away from the common stock." 2013 WL 4449969, at *5 (citing id.).  But Carsanaro – the case on which Judge Robinson relied in holding that the "asset exchange" requirement of Gentile had been met – did not involve plaintiffs who had declined an opportunity to participate in the allegedly dilutive offering.  Rather,

> [t]he plaintiffs did not learn of the issuances or their consequences until . . . [the company] was sold for total consideration of $82.5 million.  At that point, the plaintiffs discovered that their overall equity ownership had been diluted to under 1%.  After members of management received transaction bonuses of $15 million and the preferred stockholders received nearly $60 million in liquidation preferences, the plaintiffs were left collectively with less than $36,000.

65 A.3d at 627.  Just as with Dubroff, this critical factual distinction – that plaintiff here is challenging a transaction in which he himself chose not to participate – far outweighs any persuasive force of the bare conclusion that defendants here also "shifted value away from the common stock."

In fact, it would be fair to read Judge Robinson's reinstatement of the Amended Complaint as recognizing the failings in plaintiff's allegations under the second prong of Gentile, but choosing (for some unstated reason) not to revisit them at the pleading stage when the issue put before her was the "exchange for assets" requirement.  She herself noted that

> unlike many cases that have been held to be direct dilution claims, [plaintiff] does not plead facts regarding the percentage by which the controlling stockholder's ownership increased relative to the percentage by which the minority shareholders' ownership decreased.  Although [plaintiff's] complaint passes muster at this stage, it does not indicate that [plaintiff] will necessarily prevail on the merits.

8

2013 WL 4449969, at *4 n.3 (citations omitted) (distinguishing Carsanaro, 65 A.3d at 630, 634; Gentile, 906 A.3d at 95; and Dubroff, 2011 WL 5137175, at *3). I therefore hold that plaintiff has failed to state a direct claim for breach of fiduciary duty.[4]

The fact that I have reconsidered Judge Robinson's reinstatement of plaintiff's direct claim does not require me to revisit her dismissal of his claim, to the extent that it was derivative, for failure to plead demand futility. But even if I were to do so, I would agree with her holding that the Amended Complaint fails to plead demand futility in accordance with Rule 23.1.

Under Delaware law, "demand is excused if the plaintiff alleges particularized facts creating a reasonable doubt that: (1) the directors are disinterested and independent or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig., 757 F. Supp. 2d 260, 330 (S.D.N.Y. 2010) (quoting Aronson v. Lewis, 473 A.2d 805, 814 (Del. 1984)) (internal quotations omitted). "A director is interested if he or she will receive a personal financial benefit from a transaction *that is not equally shared by the stockholders . . . .*" Id. (quoting Rales v. Blasband, 634 A.2d 927, 936 (Del. 1993)) (emphasis added); see also In re Am. Int'l Grp., Inc. Derivative Litig., 700 F. Supp. 2d 419, 431 (S.D.N.Y. 2010), aff'd, 415 F. App'x 285 (2d Cir. 2011) (citing Rales, 634 A.2d at 933) ("Directorial interest exists where a director will receive a personal financial benefit from a transaction that is not equally shared by the stockholders or the corporation."); accord In re Bridgepoint Educ., Inc. S'holder Derivative Litig., No. 13-cv-2947, 2014 WL 5325711, at *10 (S.D. Cal. Oct. 17, 2014) (citing Orman v.

---

[4] In disposing of this case on this ground, I recognize the principle that "[u]nless it is unmistakably clear that . . . the complaint lacks merit or is otherwise defective, . . . it is bad practice for a district court to dismiss without affording a plaintiff the opportunity to be heard in opposition." Snider v. Melindez, 199 F.3d 108, 113 (2d Cir. 1999). I therefore note that plaintiff has already had ample opportunity to be heard on this issue. It was, of course, fully briefed before Judge Robinson. Moreover, plaintiff acknowledged that it was raised (despite Judge Robinson's ruling) in defendants' supplemental briefing before me, although he chose not to address it.

Cullman, 794 A.2d 5, 25 n.50 (Del. Ch. 2002)) ("[T]he receipt of a benefit not generally shared with other shareholders is frequently a factor when determining whether a director stands on both sides of the challenged transaction."). For much the same reason that plaintiff has failed to plead a direct claim – which boils down to his admission that no defendant obtained any benefit from the challenged transaction that was not available to any shareholder – he has failed to plead that any particular defendant was "interested" in the transaction by receiving such benefit.

Neither are there any facts alleged that are sufficient to rebut the presumption that the challenged transaction was a valid exercise of business judgment. See In re J.P. Morgan Chase & Co. S'holder Litig., 906 A.2d 808, 825 (Del. Ch. 2005), aff'd, 906 A.2d 766 (Del. 2006) ("Due to the absence of particularized factual allegations calling into question the directors' good faith, honesty, or lack of adequate information, the court finds that the complaint does not give rise to a reason to doubt whether the decision of the board of directors . . . is entitled to the protection of the business judgment rule.").

Moreover, plaintiff's allegations do not create an inference that the individual defendants were interested on the basis of their potential liability. Under that theory, "the director can only be considered 'interested' if the potential personal liability rises to 'a substantial likelihood;' it is not sufficient that 'a mere threat' of personal liability is alleged." In re Bank of Am., 757 F. Supp. 2d at 330-31 (quotations omitted). In a derivative suit, of course, "the corporation is both the party that suffers the injury (a reduction in its assets or their value) as well as the party to whom the remedy (a restoration of the improperly reduced value) would flow." Gentile, 906 A.2d at 99 (Del. 2006) (citing Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031 (Del. 2004)). Viewed as a derivative suit, the harm in this case would simply be that defendants reduced the equity value of the company by selling undervalued shares; the severity of individual

10

misconduct contemplated by this theory lies far beyond the approval of a undervalued stock sale. Cf., e.g., In re INFOUSA, Inc. S'holders Litig., 953 A.2d 963, 990 (Del. Ch. 2007) ("[T]he willingness of certain directors to issue Form 10–Ks that, allegedly, materially misrepresented the nature of benefits" were "egregious enough" to excuse demand on the basis of potential liability).[5]  Therefore, plaintiff has failed to plead demand futility in accordance with Rule 23.1.

Finally, plaintiff's second cause of action, for aiding and abetting a breach of fiduciary duty, fails because he has not plead an underlying or predicate breach.  See Higher Educ. Mgmt. Grp., Inc. v. Mathews, No. Civ. A. 9110, 2014 WL 5573325 (Del. Ch. Nov. 3, 2014).

## CONCLUSION

For the foregoing reasons, defendants' [16] motion to dismiss is granted.  The Clerk is directed to enter judgment dismissing the Amended Complaint.  Defendants' [74] letter request

---

[5] The Court of Chancery also explained in that case (although not specifically with respect to the liability theory of interestedness) that "[a]llegations of breach of fiduciary duty do not automatically excuse the demand requirement" because:

> In most derivative suits claiming waste, excessive executive or director compensation, or harm from other self-interested transactions, a plaintiff will argue that the board's decision to allow a transaction was a violation of its fiduciary duties. If the plaintiff can then avoid the demand requirement by reasoning that any board that would approve such a transaction . . . is by definition unfit to consider demand, then in few (if any) such suits will demand ever be required.  This does not comport with the demand requirement's justification as a bulwark to protect the managerial discretion of directors.

Id. at 989.

for a pre-motion conference is deemed their motion. The pre-motion conference is waived. Defendants may supplement or withdraw their motion within seven (7) days of this Order in light of this disposition of the case.

**SO ORDERED.**

                                                                                                      _____
                                                                                                                                  U.S.D.J.

Dated: Brooklyn, New York
         June 30, 2015